Filed 9/10/13  In re Steven L. CA5

<u>**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re STEVEN L., a Person Coming Under the Juvenile Court Law. | |
| TULARE COUNTY HEALTH AND HUMAN SERVICES AGENCY, | F066983 |
| Plaintiff and Respondent, | (Super. Ct. No. JJV060662C) |
| v. | **OPINION** |
| MONICA W., | |
| Defendant and Appellant. | |
| In re STEVEN L., a Person Coming Under the Juvenile Court Law. | |
| TULARE COUNTY HEALTH AND HUMAN SERVICES AGENCY, | F066984 |
| Plaintiff and Respondent, | (Super. Ct. No. JJV060662C) |
| v. | |
| STEVEN L., | |
| Defendant and Appellant. | |

## <u>THE COURT</u>*

APPEAL from orders of the Superior Court of Tulare County.  Juliet L. Boccone, Judge.

Julie E. Braden, under appointment by the Court of Appeal, for Defendant and Appellant, Monica W.

---

\*       Before Wiseman, Acting P.J., Levy, J., and Franson, J.

Gino de Solenni, under appointment by the Court of Appeal, for Defendant and Appellant, Steven L.

Kathleen Bales-Lange, County Counsel, and John A. Rozum, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

Appellant Steven L., Sr. (father) is the biological father of one-year-old Steven L., Jr. (Steven), the subject of this appeal. Father appeals from the permanency planning hearing held pursuant to Welfare and Institutions Code section 366.26[1] at which the juvenile court terminated his parental rights as well as those of Steven's mother, Monica. Father contends the juvenile court erred in denying him presumed father status under *Adoption of Kelsey S*. (1992) 1 Cal.4th 816 (*Kelsey S*.). Monica joins in father's argument. We affirm the judgment.

## PROCEDURAL AND FACTUAL SUMMARY

In July 2012, then two-month-old Steven was removed from Monica's custody along with his 20-month-old half sister Madison because of Monica's methamphetamine use and failure to ensure Steven received adequate medical care. Father was in state prison at the time with an expected release date of August 2012. Madison's father, Jonathan, was also in state prison. The Tulare County Health and Human Services Agency (agency) filed a dependency petition seeking the children's removal.

In July 2012, the juvenile court conducted a detention hearing and appointed counsel for Monica, father and Jonathan. Monica testified she was not married to father and was not living with him when Steven was born. She also testified father was not named as Steven's father on Steven's birth certificate. Following her testimony, the

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

juvenile court found father and Jonathan were alleged fathers and ordered the children detained. The court set the jurisdictional hearing for August 2012.

Prior to the hearing, the agency filed its report, recommending the juvenile court adjudge the children dependents of the court and deny Monica reunification services because of her ongoing drug use, and father and Jonathan because they were alleged fathers and not entitled to them (§ 361.5, subd. (a)).

In August 2012, the juvenile court conducted an uncontested jurisdictional hearing. Father appeared out-of-custody represented by his attorney and requested paternity testing which the court granted. Father also submitted a "Statement Regarding Parentage" (JV-505) asking the juvenile court to enter a judgment of parentage. He stated in the JV-505 he told his mother, sister, family and friends that Steven was his child and his sister, brother and mother visited Steven when Steven was ill. Father also stated in the JV-505 he wanted the court to know that he claimed Steven as his own child.

At the conclusion of the jurisdictional hearing, the juvenile court adjudged Steven and Madison dependents of the court and set the dispositional hearing for September 2012.

In September 2012, Monica and father appeared at the dispositional hearing. Father told the court he was still waiting to be contacted for paternity testing. Father's attorney told the court he and father discussed filing a voluntary declaration of paternity but father had not done so. His attorney also stated he would petition the court under section 388 to change its order denying father reunification services if father was found to be Steven's biological father. No mention was made of father's JV-505 and no hearing was set to elevate his paternity status to presumed father.

At the conclusion of the dispositional hearing, the juvenile court denied Monica, father and Jonathan reunification services and set a section 366.26 hearing. The juvenile court advised Monica and father of their right to seek writ review of its findings and

3

orders and provided them blank writ petition forms.  They did not seek writ review of the juvenile court's dispositional orders.

In its report for the section 366.26 hearing, the agency recommended the juvenile court terminate parental rights and select adoption as the permanent plan for Steven who was in a prospective adoptive home and for Madison who was placed with relatives.

In February 2013, the juvenile court conducted a contested section 366.26 hearing. By that time, father completed paternity testing which yielded a 99.99 percent probability that he is Steven's biological father.  Neither Monica nor father personally appeared at the hearing.  Monica's attorney told the juvenile court that Monica was in a rehabilitation facility and submitted on the agency's recommendation.  The juvenile court terminated Monica and Jonathan's parental rights as to Madison and Monica and father's parental rights as to Steven.  This appeal ensued.

## DISCUSSION

Father contends the juvenile court erred in not declaring him Steven's presumed father under *Kelsey S*.  He acknowledges he did not attempt to raise his paternity status on those grounds during the dependency proceedings.  Nevertheless, he argues, the juvenile court had a sua sponte duty to consider his request for presumed father status because he filed a JV-505 requesting a judgment of parentage.  By failing to do so, he further argues, the juvenile court prevented him from participating in reunification services and violated his constitutional right to parent Steven.

### I.     Legal Principles

#### A.     *Presumed Father*

Dependency law recognizes three types of fathers—presumed, alleged and biological. (*In re Zacharia D*. (1993) 6 Cal.4th 435, 449, fn. 15 (*Zacharia D*.).)  A biological father is one who established biological paternity, but has not achieved presumed father status.  (*Ibid.*)  A presumed father is one who satisfies one or more

4

specified criteria contained in Family Code section 7611.  A presumed father may or may not be the child's biological father.  (*Zacharia D*., *supra*, 6 Cal.4th at p. 450, fn. 18.)  An alleged father is a man who may be the child's father but who has not established biological or presumed father status.  (*Id.* at p. 449, fn. 15.)

A presumed father has the greatest paternity rights, including the right to reunification services.  (§ 361.5, subd. (a).)  A biological father, on the other hand, does not have a right to reunification services.  However, the juvenile court may order them for him if doing so would benefit the child.  (*Ibid.*)  An alleged father has no legal interest in the child until he establishes his paternity.  (*In re O.S.* (2002) 102 Cal.App.4th 1402, 1406.)

A man may attain presumed father status by satisfying any of the rebuttable presumptions of paternity set forth in Family Code section 7611.  Where, as here, a man seeking presumed father status has neither married nor attempted to marry his child's biological mother, he must prove that he openly held the child out as his natural child and physically received the child into his home.  (Fam. Code, § 7611, subd. (d).)  Alternatively, he may attain presumed father status by executing a voluntary declaration of paternity.  (Fam. Code, §§ 7611, 7573.)

The juvenile court is required to inquire of the mother and any other appropriate person at the detention hearing, or as soon thereafter as practicable, as to the identity and address of all presumed or alleged fathers, including whether any man qualifies as a presumed father under Family Code section 7611, or any other provision, of the Family Code.  (§ 316.2, subd. (a).)

B.      *Kelsey S. Father*

In *Kelsey S*., the California Supreme Court held that an unwed biological father who does not satisfy the presumptions now contained in Family Code section 7611 has constitutionally protected parental rights if he promptly came forward and demonstrated a

5

"full commitment to his parental responsibilities--emotional, financial and otherwise";
the child's mother thwarted his efforts to assume his parental responsibilities; and he
demonstrated a willingness to assume full custody of the child. (*Kelsey S.*, *supra*, 1
Cal.4th at p. 849.)

The juvenile court is not required to inquire as to the existence of a *Kelsey S.*
father. Rather, the biological father seeking *Kelsey S.* status bears the burden of
establishing the factual predicate for *Kelsey S.* rights. (*Adoption of O.M.* (2008) 169
Cal.App.4th 672, 679-680.)

In determining whether a biological father qualifies under *Kelsey S.*, the juvenile
court must consider the father's conduct before and after the child's birth and efforts he
made to assume full custody of the child. The juvenile court should also consider the
father's public acknowledgement of paternity, payment of pregnancy and birth expenses
commensurate with his ability to do so, and prompt legal action to seek custody of the
child. (*Kelsey S.*, *supra*, 1 Cal.4th at p. 849.)

## II.    Analysis

### A.    Father Forfeited the Kelsey S. Issue on Appeal

Father acknowledges he never asked the juvenile court to declare him Steven's
father under *Kelsey S.* By failing to do so, he forfeited his right to raise it on appeal.
Forfeiture applies in juvenile dependency litigation and is intended to prevent a party
from standing silently by until the conclusion of the proceedings. (*In re Dakota H.*
(2005) 132 Cal.App.4th 212, 222.) A party may not assert theories on appeal that were
not raised in the trial court. (*Fretland v. County of Humboldt* (1999) 69 Cal.App.4th
1478, 1489.)

Father contends forfeiture does not apply because the juvenile court had a sua
sponte duty to consider whether he qualified as a presumed father. He further contends
this court should review his *Kelsey S.* argument to forestall a claim trial counsel was

6

ineffective for not challenging the juvenile court's failure to elevate his paternity status by writ petition from the setting hearing and/or seeking to elevate his paternity status by filing a petition under section 388 after receiving his paternity test results.

As stated above, father bore the burden of proving he qualified as a *Kelsey S.* father. The juvenile court had a duty to inquire if he satisfied any of the statutory presumptions for presumed father. The juvenile court did so and father did not qualify because he did not receive Steven into his home.

Further, any claim of ineffective assistance of counsel would fail for two reasons. First, there is no evidence on this record as we discuss in the next section to support a finding father qualifies as a *Kelsey S.* father. Consequently, counsel's failure to seek appellate review of the juvenile court's paternity finding did not prejudice father. (*In re Nada R*. (2001) 89 Cal.App.4th 1166, 1180.) More importantly, father's attorney informed him about filing a voluntary declaration of paternity and father failed to do so. Had father executed a voluntary declaration of paternity, he could have rightfully argued for reunification services at the dispositional hearing. Thus, father's failure to attain presumed father status was not a result of ineffective assistance of counsel but of his own inaction.

B.      *Father is not a Kelsey S. Father*

Father contends the juvenile court should have found a sufficient factual basis in his JV-505 to declare him Steven's *Kelsey S.* father.[2] We first note that at the time father

---

[2]      Father also contends, citing the reporter's transcript for the August 2012 jurisdictional hearing, he signed an acknowledgement of paternity while incarcerated. The only such reference in the pages he cites was actually made by Jonathan who stated: "[R]ight after my daughter was born, I was in county jail. They sent me paperwork saying I'm not contesting that I signed it. I don't know what happened. Where it went. I'm just saying that's what the paperwork that I signed was saying, I was the father, you know."

filed the JV-505, he was Steven's alleged father. *Kelsey S.* applies to a biological father, not an alleged father.

Nonetheless, father argues in his appeal that he "immediately came forth" and "demonstrated a full commitment to his parental responsibilities" because he publicly acknowledged paternity and requested paternity testing. He also cites the fact that he "checked off the box [in the JV-505] indicating that if found to be the biological father, he would financially support Steven .…" Such evidence does not trigger the constitutional protections of *Kelsey S.* If anything, father's unwillingness to financially support Steven unless he was Steven's biological father runs counter to the full parental commitment envisioned in *Kelsey S.*

We conclude father forfeited the right to claim *Kelsey S.* status on appeal and, notwithstanding forfeiture, he does not qualify. Finally, because we reject father's contention he is a *Kelsey S.* father, we need not address his contention the juvenile court was required to find him unfit before terminating his parental rights.

### DISPOSITION

We affirm the juvenile court's orders issued on February 4, 2013, terminating father and Monica's parental rights.